UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GADELLE DANTE FERGUSON,<br><br>Defendant. | Criminal No. 17-204 (JRT/BRT)<br><br>**MEMORANDUM OPINION ON SENTENCING** |

Thomas Calhoun-Lopez, Assistant United States Attorney, Erica MacDonald, United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for plaintiff.

Shannon R. Elkins, Assistant Federal Defender, **OFFICE OF THE FEDERAL DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for defendant.

Gadelle Dante Ferguson pled guilty to one count of Possession With Intent to Distribute 500 Grams or More of a Mixture and Substance Containing a Detectable Amount of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A). The Court sentenced Ferguson to 120 months imprisonment, which constitutes a downward variance from the recommended imprisonment range under the United States Sentencing Guidelines. There are several reasons for the variance, including the Court's policy disagreement with the Guidelines' treatment of offenses involving actual/pure methamphetamine. This Memorandum Opinion further explains the Court's policy disagreement.

## BACKGROUND

The current Guidelines establish base offense levels for methamphetamine offenses that depend on the drug's purity.[1] For example, a defendant whose offense involves 15 kg of a methamphetamine mixture and another defendant whose offense involves 1.5 kg – ten times less – of actual/pure methamphetamine would both have a base offense level of 36. U.S.S.G § 2D1.1(c)(2) (2016). The current Guidelines treat both those amounts for sentencing purposes as equivalent to 30,000 kg of marijuana. *Id.*

This was not always the case. The 1987 Guidelines treated 1.5 kg of methamphetamine as equivalent to 600 kg of marijuana. *See* U.S.S.G. § 2D1.1 (1987).[2] The 1987 Guidelines' Drug Quantity Table did not differentiate actual/pure methamphetamine from methamphetamine mixtures but provided that "purity of the controlled substance . . . may be relevant in the sentencing process because it is probative of the defendant's role or position in the chain of distribution." *Id.* § 2D1.1 cmt. 9.

In 1988, Congress established mandatory-minimum sentences for methamphetamine offenses. Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690,

---

[1] The Guidelines treat methamphetamine greater than 80% pure as "pure" methamphetamine, or "ice." U.S.S.G. § 2D1.1(c), n.(C).

[2] The 1987 Guidelines treated 1g of methamphetamine as equivalent to 2g of cocaine or 0.4g of heroin. U.S.S.G. § 2D1.1 cmt. 10, Drug Equivalency Tables (1987). Thus, the 1987 Guidelines treated 1.5 kg of methamphetamine as equivalent to 3 kg of cocaine or 600g of heroin, which would result in a base offense level of 28 – the same base offense level for an offense involving 600 kg of marijuana.

§ 6470(g)-(h), 102 Stat. 4181, 4378 (codified at 21 U.S.C. § 841(b)(1)).[3] Those mandatory minimums had a 10-to-1 ratio based on purity. An offense involving 100g of a methamphetamine mixture or 10g of actual/pure methamphetamine had a 5-year mandatory minimum; and an offense involving 1 kg of a methamphetamine mixture or 100g of actual/pure methamphetamine had a 10-year mandatory minimum. *Id.*

The following year, in 1989, the United States Sentencing Commission revised the Drug Quantity Table in § 2D1.1 by incorporating the statutory penalties and by differentiating between actual/pure methamphetamine and methamphetamine mixtures at the same 10-to-1 ratio. For example, the 1989 Guidelines treated 15 kg of a methamphetamine mixture and 1.5 kg of actual/pure methamphetamine each as being equivalent to 15,000 kg of marijuana. *See* U.S.S.G. § 2D1.1(c)(4) (1989). A defendant with a criminal-history category of I convicted of an offense involving just enough methamphetamine to trigger a statutory mandatory minimum under the Anti-Drug Abuse Act of 1988 would have received under the 1989 Guidelines a recommended sentence consistent with the statutory mandatory minimum. For example, an offense involving 100g of a methamphetamine mixture or 10g of actual/pure methamphetamine would have resulted in a 5-year mandatory minimum and yielded a base offense level of 26, yielding a Guideline range of 63-78 months imprisonment. *Id.* § 2D1.1(c)(9); *id.* ch. 5, pt. A. Similarly, an offense involving 1 kg of a methamphetamine mixture or 100g of

---

[3] "The 1988 Act actually mistakenly set the ten-year minimum quantity of mixture at 100 grams. This error was corrected in 1990." Lou Reedt et al., U.S. Sentencing Comm'n, *Methamphetamine: Final Report* 8 n.19 (Nov. 1999), https://www.ussc.gov/sites/default/files/pdf/research/working-group-reports/drugs/199911_Meth_Report.pdf.

actual/pure methamphetamine would have resulted in a 10-year mandatory minimum and base offense level of 32, yielding a Guideline range of 121-151 months. *Id.* § 2D1.1(c)(6); *id.* ch. 5, pt. A.

Most recently, in 1998, Congress amended the statutory penalties for methamphetamine offenses by cutting in half the amounts that triggered the respective mandatory-minimum sentences. Methamphetamine Trafficking Penalty Enhancement Act of 1998, Div. E, § 2, Pub. L. No. 105-277, 112 Stat. 2681, 2681–759. Shortly thereafter, the Commission again followed Congress's lead and accordingly increased the base offense levels for methamphetamine offenses. U.S.S.G. § 2D1.1(c)(4), (7) (2000). Consequently, today an offense involving 50g of a methamphetamine mixture or 5g of actual/pure methamphetamine triggers a 5-year mandatory minimum. 21 U.S.C. § 841(b)(1)(B)(viii). The same offense yields a base offense level of 24, which for a defendant with a criminal-history category of I yields a range of 51-63 months imprisonment. U.S.S.G. § 2D1.1(c)(8); *id.* ch. 5, pt. A. And, an offense involving 500g of a methamphetamine mixture or 50g of actual/pure methamphetamine triggers a 10-year mandatory minimum. 21 U.S.C. § 841(b)(1)(A)(viii). That offense yields a base offense level of 30, which for a defendant with a criminal-history category of I yields a range of 97-121 months imprisonment. U.S.S.G. § 2D1.1(c)(5); *id.* ch. 5, pt. A.

To summarize, the Commission twice amended the Guidelines for methamphetamine offenses so that the base offense levels (for a defendant with a criminal-history category of I) would exactly align with the mandatory-minimum

sentences – and the Commission did so each time right after Congress created or changed the minimum sentences.

## DISCUSSION

**I. THE COURT'S POLICY DISAGREEMENT WITH THE ACUTAL/PURE METHAMPHETAMINE GUIDELINES**

District courts may impose sentences that vary from the Guidelines based on a policy disagreement with the Guidelines. *Spears v. United States*, 555 U.S. 261, 267 (2009) (per curiam); *Kimbrough v. United States*, 552 U.S. 85, 101-02 (2007); *Rita v. United States*, 551 U.S. 338, 351 (2007). While each sentencing is an individualized determination, *see* 18 U.S.C. § 3553(a), a district court's policy disagreement with the Guidelines may justify categorical variances, not just variances based on individualized determinations, *Spears*, 555 U.S. at 267. "Several [courts of appeals] have expressly held that *Spears* and *Kimbrough* mean that district courts have broad authority to premise a variance on disagreement with the policy of any guideline." *United States v. Trejo*, 624 F. App'x 709, 713 (11th Cir. 2015) (collecting cases); *see United States v. Zauner*, 688 F.3d 426, 431 (8th Cir. 2012) (Bright, J., concurring).

"[T]he Commission fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough*, 552 U.S. at 108-09 (quoting *United States v. Pruitt*, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)). "[I]n the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s

- 5 -

objectives.'" *Id.* at 109 (quoting *Rita*, 551 U.S.at 350). "In light of these discrete institutional strengths, a district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case 'outside the "heartland" to which the Commission intends individual Guidelines to apply.'" *Id.* (quoting *Rita*, 551 U.S. at 351.)

"[T]he Sentencing Commission departed from the empirical approach when setting the Guidelines range for drug offenses, and chose instead to key the Guidelines to the statutory mandatory minimum sentences that Congress established for such crimes." *Gall v. United States*, 552 U.S. 38, 46 n.2 (2007); *see also United States v. Diaz*, No. 11-821, 2013 WL 322243, at *3-6 (E.D.N.Y. Jan. 28, 2013). In *Kimbrough*, the Supreme Court held that the Guidelines ranges for crack cocaine offenses did "not exemplify the Commission's exercise of its characteristic institutional role," and instead the Commission "looked to the mandatory minimum sentences . . . , and did not take account of 'empirical data and national experience.'" 552 U.S. at 109 (quoting *Pruitt*, 502 F.3d at 1171).

"[N]o United States Circuit Court of Appeals has provided guidance to district courts to reject the methamphetamine Guidelines, presumably because of the district courts' wide discretion to decide the weight of the Guidelines." *United States v. Nawanna*, No. 17-4019, 2018 WL 2021350, at *4 (N.D. Iowa May 1, 2018). But several district courts have found that the Guidelines ranges for offenses involving actual/pure methamphetamine, like their crack-cocaine counterparts, are not based on empirical data and national experience, and thus do not exemplify the Commission's exercise of its

characteristic institutional role.[4]  Rather, those courts have found that "the Commission simply keyed the Guidelines range to the statutory mandatory minimum sentences Congress established for drug crimes, despite the fact that the resulting Guidelines sentences would be 'much more severe than the average sentences previously meted out to drug trafficking offenders.'"  *United States v. Ibarra-Sandoval*, 265 F. Supp. 3d 1249, 1253 (D.N.M. 2017) (citation omitted) (quoting *Diaz*, 2013 WL 322243, at *5).[5]  Consequently, those courts – exercising their discretion under *Kimbrough* and *Spears* – have granted downward variances in sentencing defendants convicted of offenses involving actual/pure methamphetamine, in part, because of those courts' policy disagreements with the Guidelines ranges for actual/pure methamphetamine offenses.

This Court agrees.[6]  First, "[t]he 10-to-1 ratio established in the Guidelines is not based on empirical evidence, creating Guideline ranges for actual (and ice) methamphetamine that are excessive and not 'heartlands.'  *United States v. Harry*, No. 17-

---

[4] *See United States v. Harry*, No. 17-1017, 2018 WL 2717224, at *3-5 (N.D. Iowa June 6, 2018) (Strand, C.J.); *Nawanna*, 2018 WL 2021350, at *5-9 (Bennett, J.); *United States v. Ibarra-Sandoval*, 265 F. Supp. 3d 1249, 1252-54 (D.N.M. 2017) (Brack, J.); *United States v. Jennings*, No. 16-48, 2017 WL 2609038, at *2-4 (D. Idaho June 15, 2017) (Winmill, C.J.); *United States v. Ortega*, No. 09-400, 2010 WL 1994870, at *4-7 (D. Neb. May 17, 2010) (Bataillon, C.J.).

[5] *Accord Harry*, 2018 WL 2717224, at *3-5; *Nawanna*, 2018 WL 2021350, at *5-9; *Jennings*, 2017 WL 2609038, at *2-4; *Ortega*, 2010 WL 1994870, at *4-7.

[6] The Court's policy disagreement with the Guidelines in this Memorandum Opinion is limited to the Guidelines' enhanced treatment of pure/actual methamphetamine compared to methamphetamine mixtures.  The Court notes, however, that the Guidelines treat offenses involving methamphetamine mixtures more harshly than offenses involving other substances.  *See Harry*, 2018 WL 2717224, at *5.

1017, 2018 WL 2717224, at *3 (N.D. Iowa June 6, 2018).[7] To the extent that it could be argued that the 10-to-1 ratio is an expression of Congress's views about how offenses involving actual/pure methamphetamine should be punished, the Supreme Court squarely rejected that line of reasoning in *Kimbrough*. "The statute, by its terms, mandates only maximum and minimum sentences. . . . The statute says nothing about the appropriate sentences within these brackets." *Kimbrough*, 552 U.S. at 102-03.

Second, methamphetamine purity is no longer a proxy for, and thus not probative of, the defendant's role or position in the chain of distribution. The average purity of all methamphetamine in the United States is over 90 percent – and has been since 2011. U.S. Dep't of Justice, Drug Enforcement Admin., *2017 National Drug Threat Assessment* 67-70 (2017), https://www.dea.gov/docs/DIR-040-17_2017-NDTA.pdf.[8] Consequently, punishing low-level offenders as if they had played a prominent role in drug trafficking "can lead to perverse sentencing outcomes." *Nawanna*, 2018 WL 2021350, at *7.[9] This

---

[7] *Accord Nawanna*, 2018 WL 2021350, at *3; *Ibarra-Sandoval*, 265 F. Supp. 3d at 1252-53; *Jennings*, 2017 WL 2609038, at *3; *Ortega*, 2010 WL 1994870, at *6-7.

[8] *See also Harry*, 2018 WL 2717224, at *3; *Nawanna*, 2018 WL 2021350, at *9; *Ibarra-Sandoval*, 265 F. Supp. 3d at 1253; *Jennings*, 2017 WL 2609038, at *3; *Ortega*, 2010 WL 1994870, at *7.

[9] *See also Harry*, 2018 WL 2717224, at *3; *Nawanna*, 2018 WL 2021350, at *9; *Ibarra-Sandoval*, 265 F. Supp. 3d at 1253; *Jennings*, 2017 WL 2609038, at *3; *Ortega*, 2010 WL 1994870, at *7.

creates a substantial risk of unwarranted sentencing disparities, which courts must avoid. 18 U.S.C. § 3553(a)(6).[10]

Third, the prevalence of high-purity methamphetamine virtually guarantees that a defendant's base offense level under the Guidelines will substantially increase if the methamphetamine is tested for purity – a decision that can be completely arbitrary.[11] That potentially leads to a perverse game of beat the clock, whereby an accused may try to plead guilty and get sentenced before lab results come back, so that his offense is treated as involving a methamphetamine mixture rather than actual/pure methamphetamine. A lab technician's work speed should not determine the number of years a person spends behind bars.[12]

## II. APPLICATION

In part because of the Court's policy disagreement with the Guidelines' treatment of offenses involving actual/pure methamphetamine, the Court granted Ferguson's

---

[10] *See also Nawanna*, 2018 WL 2021350, at *7; *Ibarra-Sandoval*, 265 F. Supp. 3d at 1253; *Jennings*, 2017 WL 2609038, at *7; *Ortega*, 2010 WL 1994870, at *3.

[11] *Nawanna*, 2018 WL 2021350, at *3; *Ibarra-Sandoval*, 265 F. Supp. 3d at 1256; *Jennings*, 2017 WL 2609038, at *4; *Ortega*, 2010 WL 1994870, at *4-7.

[12] Indeed, that is what happened here. The United States Probation Office submitted its first Presentence Report ("PSR") on June 14, 2018. (1st PSR, June 14, 2018, Docket No. 55.) In it, the Probation Office determined Ferguson's total offense level to be 29 under the methamphetamine-mixture Guidelines, yielding a Guideline range of 140 to 175 months, because the purity was unknown at the time. (*Id.* ¶¶ 7, 16, 94.) Less than a month later, the Probation Office submitted a revised PSR ("2d PSR") because the purity of the methamphetamine had been determined. (*See* 2d PSR ¶¶ 7, 16, July 9, 2018, Docket No. 62.) Ferguson's revised total offense level became 33, yielding a Guideline range of 210 to 262 months – an increase of almost six years. (*Id.* ¶¶ 16, 94.)

motion for a downward variance. Ferguson argued that the Guideline range applicable for methamphetamine mixtures more accurately reflects the appropriate range for him rather than the range applicable for pure/actual methamphetamine. The Court agreed.[13] *See Harry*, 2018 WL 2717224, at *5 (considering the Guideline range for methamphetamine mixtures instead of for actual/pure methamphetamine); *Nawanna*, 2018 WL 2021350, at *9 (same); *Ibarra-Sandoval*, 265 F. Supp. 3d at 1256-57 (same); *see also Spears*, 555 U.S. at 265 (2009) ("A sentencing judge who is given the power to reject the disparity created by the crack-to-powder ratio must also possess the power to apply a different ratio which, in his judgment, corrects the disparity. Put simply, the ability to reduce a mine-run defendant's sentence necessarily permits adoption of a replacement ratio."). Under the methamphetamine-mixture Guidelines, Ferguson's Guideline range would be 140 to 175 months. (*See* 1st PSR ¶¶ 7, 16, 94, June 14, 2018, Docket No. 55.) Considering how the methamphetamine-mixture Guidelines would have applied to Ferguson, along with all the § 3553(a) sentencing factors, the Court sentenced Ferguson to 120 months imprisonment. The Court found that Ferguson's sentence was sufficient but no greater than necessary and would not result in any unwarranted sentencing disparities.

---

[13] In its position on sentencing, the United States did not respond to Ferguson's argument that the Court should grant a downward variance based on a policy disagreement with the Guidelines' treatment of pure/actual methamphetamine. Instead, the United States simply maintained that a sentence of 210 to 262 months was reasonable under § 3553(a). (Pl.'s Posit. on Sent'g at 2-4, July 11, 2018, Docket No. 63.) The United States made no argument at sentencing that related to the purity of the methamphetamine involved in Ferguson's offense.

DATED: August 2, 2018                      _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                                                 Chief Judge
                                                       United States District Court